**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAMAKRISHNA VEMURI,<br><br>     Plaintiff,<br><br>     v.<br><br>JANET NAPOLITANO, Secretary,<br>Department of Homeland Security, *et al.*,<br><br>     Defendants. | **Civil Action No. 11-802 (CKK)** |

**MEMORANDUM OPINION**
(February 27, 2012)

Plaintiff Ramakrishna Vemuri filed suit against Janet Napolitano as Secretary of the

Department of Homeland Security, the United States Citizenship and Immigration Services

("USCIS"), and Eric Holder as Attorney General, alleging the USCIS wrongly denied his I-140

visa petition, I-485 application for adjustment of status, and I-765 applications for employment

authorization.  Defendants filed a [5] Motion to Dismiss Plaintiff's Complaint Under Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Defs.' Mot.").  Defendants argue that

Plaintiff's Complaint must be dismissed because Plaintiff lacks standing to challenge the denial

of his I-140 visa petition, and because Defendants properly denied the visa petition and

Plaintiff's related applications as a matter of law.  The motion is now fully briefed.[1]  For the

reasons stated below, the Court finds Plaintiff lacks standing to challenge the denial of the I-140

visa petition and consequently lacks standing to challenge the denial of his I-485 and I-765

applications.  Therefore, Defendants' motion to dismiss for lack of subject matter jurisdiction is

---

[1] *See* [6] Pl.'s Opp'n; [7] Defs.' Reply.

GRANTED.  Lacking jurisdiction, the Court does not reach Defendants' motion to dismiss for

failure to state a claim.[2]

## I. BACKGROUND

*A.    Statutory Framework*

The Immigration and Nationality Act ("INA") provides a three step process for non-

citizens to obtain permanent employment in the United States in certain occupations.  First, the

employer must apply for a labor certification from the Department of Labor confirming that

> there are not sufficient workers who are able, willing, qualified . . . and available
> at the time of application for a visa and admission to the United States and at the
> place where the alien is to perform such skilled or unskilled labor, and the
> employment of such alien will not adversely affect the wages and working
> conditions of workers in the United States similarly employed.

8 U.S.C. § 1182(a)(5)(A)(i)(I)-(II).  Once the certification is obtained, the employer must submit

the certification along with an I-140 visa petition to the USCIS on behalf of the non-citizen

worker, who is known as the "beneficiary" to the petition.  8 C.F.R. § 204.5(l)(1); *see* 8 U.S.C.

§ 1153(b)(3)(C).  The employer must also submit documentation to show that the non-citizen

worker meets any educational, training and experience, or other requirements dictated by the

labor certification.  8 C.F.R. § 204.5(l)(3)(ii).  The employer must also show that the it has the

ability to pay the wage specified in the labor certification, from the date on which the request for

the labor certification was submitted to the Department of Labor until the non-citizen worker

---

[2]  Although the parties did not raise the issue in their briefs, out of an abundance of
caution the Court required the parties to indicate whether or not 8 U.S.C. § 1252(a)(2)(B) barred
the Court from reviewing the denial of the I-140 petition filed on Plaintiff's behalf.  01/25/12
Order, ECF No. [10].  The parties contend, and the Court agrees, that § 1252(a)(2)(B) precludes
judicial review of discretionary decisions not at issue in this case, and therefore does not itself
preclude the Court from exercising subject matter jurisdiction in this case.  Resp. to Order of the
Ct., ECF No. [11].

obtains lawful permanent resident status.  8 C.F.R. § 204.5(g)(2).

Once the USCIS approves the I-140 petition, the non-citizen worker may apply to adjust his or her immigration status to that of a lawful permanent resident by filing an I-485 Application to Register Permanent Residence or Adjust Status.  8 U.S.C. § 1255(a).  In some cases, the non-citizen worker can file the I-485 application at the same time the employer files the I-140 petition.  *See* 8 C.F.R. § 245.2(a)(2)(i)(B).  However, the USCIS cannot approve the I-485 application unless and until it approves the underlying I-140 visa petition.  *See* 8 U.S.C. § 1255(a).  While the I-485 application is pending, the non-citizen can also file an I-765 Application for Employment Authorization.  8 C.F.R. § 274a.12(c)(9) (noting a non-citizen is not an "unauthorized alien" under the INA for purposes of employment "while his or her properly filed Form I-485 application is pending final adjudication").

> B.      *Factual Background*

Real Technologies USA, Inc., ("Real Technologies"), applied for a labor certification on behalf of the Plaintiff, which the Department of Labor certified on August 18, 2003.  Compl. ¶ 10; *id.* at Ex. 1 (Final Determination on Application for Employment Certification).  Real Technologies filed an I-140 visa petition on behalf on Plaintiff in July 2007.  *Id.* at ¶ 11; *id.* at Ex. 4 (Decision on I-140 Immigrant Petition for Alien Worker).  In August 2007, Plaintiff submitted an I-485 application to adjust his immigration status.  *Id.* at ¶ 11; *id.* at Ex. 5 (Decision on I-485 Application to Register Permanent Residence or Adjust Status).  The USCIS denied the underlying I-140 petition on June 4, 2008, concluding that Real Technologies failed to show it had the ability to pay the wage required by the labor certification for the years 2003 and 2006.  *Id.* at ¶ 14; *id.* at Ex. 4.  On the same day, the USCIS denied Plaintiff's I-485 application on the

basis that the I-140 petition was denied, and therefore Plaintiff was no longer the "beneficiary of a valid unexpired visa petition." *Id.* at ¶¶ 12, 15; *id.* at Ex. 5.

Real Technologies appealed the denial of its I-140 petition to the USCIS Adrministrative Appeals Office.  Compl. ¶ 17; *id.* at Ex. 6 (Receipt of Notice of Appeal to the Commissioner).  While the appeal was pending, Plaintiff filed an I-765 application for employment authorization as his employment authorization was set to expire in November 2008.  *Id.* at ¶¶ 22-23; *id.* at Ex. 8 (11/17/2008 Receipt of Application for Employment).  The USCIS denied Plaintiff's I-765 application in January 2009 on the grounds that Plaintiff's I-485 application was no longer pending as required to obtain employment authorization.  *Id.* at ¶ 25; *id.* at Ex. 9 (Decision on I-765 Application for Employment Authorization).  In April 2009, Plaintiff once again applied for employment authorization, which the USCIS denied on the same basis as Plaintiff's previous application.  *Id.* at ¶¶ 26-27; *id.* at Ex. 10 (4/3/2009 Receipt of Application for Employment Authorization); *id.* at Ex. 11 (6/23/2009 Decision on I-765 Application for Employment Authorization).

The Administrative Appeals Office rejected Real Technologies' appeal.  *Id.* at ¶ 28; *id.* at Ex. 12 (7/26/2010 Decision of the Administrative Appeals Office).  The Officer upheld the initial finding that the company failed to prove it had the ability to or actually did pay Plaintiff the required wage during 2003 and 2006.  Ex. 12 at 6-8.  The Office further concluded that Real Technologies failed to show Plaintiff met the minimum qualifications outlined in the labor certification.  *Id.* at 8-10.  Real Technologies moved to reconsider the AAO's decision.  Compl. ¶ 29; *id.* at Ex. 13.  However, the USCIS dismissed the appeal as untimely.  *Id.* at Ex. 13 (10/29/2010 Decision of the Administrative Appeals Office).  Plaintiff filed suit challenging the

denial of the I-140 petition, I-485 application, and both I-765 applications on April 27, 2011.
*Id.*, ECF No. [1].

## II.  LEGAL STANDARD

Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) for lack of
subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim, but the Court only
reaches the former.  "Federal courts are courts of limited jurisdiction" and can adjudicate only
those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian
Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court begins with the presumption that it
does not have subject matter jurisdiction over a case.  *Id.* at 377.  In order to survive a motion to
dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has
subject matter jurisdiction. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).
In determining whether there is jurisdiction, the Court may "consider the complaint
supplemented by undisputed facts evidenced in the record, or the complaint supplemented by
undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground
Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "At the motion to
dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with
sufficient liberality to afford all possible inferences favorable to the pleader on allegations of
fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  "Although a court
must accept as true all factual allegations contained in the complaint when reviewing a motion to
dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer
scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a
claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007)

(internal citations and quotation marks omitted).

## III. DISCUSSION

Plaintiff's Complaint seeks an order requiring the USCIS to reverse its previous denial of Real Technologies' I-140 visa petition, and Plaintiff's I-485 application to adjust status and I-765 applications for employment authorization.  Defendants assert that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff lacks standing to challenge the denial of the I-140 petition, and any complaint regarding the denial of Plaintiff's adjustment of status and employment authorization applications cannot be remedied because the Court lacks jurisdiction.  In the alternative, Defendants argue that the denial of the I-140 petition was substantively proper, meaning the denial of Plaintiff's applications was correct as a matter of law.  As explained below, the Court finds Plaintiff lacks standing to appeal the denial of the I-140 visa petition, and consequently, also lacks standing to challenge the denial of his I-485 and I-765 applications.

A.     *Standing to Appeal Denial of Real Technologies' I-140 Visa Petition*

Defendants initially move to dismiss the Complaint on the basis that Plaintiff lacks standing to challenge the denial of the I-140 visa petition Real Technologies filed on his behalf.[3] "Article III of the Constitution restricts the federal courts to deciding only actual, ongoing controversies, and a federal court has no power to render advisory opinions [or] ... decide questions that cannot affect the rights of litigants in the case before them." *Nat'l Black Police*

---

[3] Defendants note that "USCIS regulations implementing the employment-based visa petition process contemplate the employer-petitioner's interests."  Defs.' Mot. at 7.  However, Defendants fail to explain how agency regulations implicate the Court's constitutional or prudential standing analysis, and therefore the Court does not address the regulations.

*Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (internal citations and quotations omitted).  The case or controversy requirement "means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks omitted).  Standing is a "'threshold jurisdictional question' that cannot be assumed in resolving litigation." *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).

Plaintiff challenges the denial of the I-140 petition under section 10(a) of the Administrative Procedures Act.  The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The Supreme Court explained this section "impose[s] a prudential standing requirement in addition to the requirement, imposed by Article III of the Constitution, that a plaintiff have suffered a sufficient injury in fact." *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998).  As explained below, although Plaintiff sufficiently alleges a redressable injury as required for constitutional standing, Plaintiff fails to show he has prudential standing to challenge the denial of the I-140 petition.

1.  Constitutional Standing

To establish constitutional standing, Plaintiff must first show that he has suffered an "injury in fact," that is, the violation of a legally protected interest that is "(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotations omitted).  Second, "there

must be a causal connection between the injury and the conduct complained of." *Id.* Third, it

must be "likely" that the injury would be "redressed by a favorable decision." *Id.* (quoting

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

Plaintiff argues that he has "been aggrieved by the denial of the I-140, [sic] petition"

because it impeded his ability to adjust his immigration status and obtain employment

authorization.  Pl.'s Opp'n at 5 (citing *Sanchez-Trujillo v. INS*, 620 F. Supp. 1361, 1362-63

(W.D.N.C. 1985)).  Defendants do not dispute that this alleged injury is sufficiently traceable to

Defendants' conduct and redressable for purposes of constitutional standing.  Therefore, the

Court finds that Plaintiff has constitutional standing to challenge the denial of the I-140 petition.[4]

2.    Prudential Standing

In addition to demonstrating constitutional standing, Plaintiff must also show he has

prudential standing to challenge the denial of the I-140 visa petition.  Prudential standing

requires Plaintiff to show that his alleged injuries "arguably fall within the zone of interests

protected or regulated by the statutory provision."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

This requirement excludes only those whose interests are "so marginally related to or

inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that

Congress intended to permit the suit."  *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

"[T]he injury that supplies constitutional standing must be the same as the injury within the

---

[4] Even though adjustment to lawful permanent resident status is ultimately in the Attorney General's discretion, that alone does not mean that Plaintiff's interest in adjusting his status cannot support a claim for constitutional standing.  8 U.S.C. § 1255(a).  The fact that "the [agency] might reach the same result exercising its discretionary powers lawfully," does not deprive an individual of constitutional standing to challenge the agency's action as unlawful. *FEC v. Akins*, 524 U.S. 11, 25 (1998).

requisite 'zone of interests' for purposes of prudential standing." *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).  The Supreme Court has "consistently held that for a plaintiff's interests to be arguably within the 'zone of interests' to be protected by a statute, there does not have to be an 'indication of congressional purpose to benefit the would-be plaintiff.'" *Nat'l Credit Union Admin.*, 522 U.S. at 492 (quoting *Clarke*, 479 U.S. at 399-400). Rather, this standard excludes "only those parties whose interests are not consistent with the purposes of the statute in question." *Amgen, Inc. v. Smith*, 357 F.3d 103, 108-09 (D.C. Cir. 2004) (internal quotation marks omitted).

Plaintiff argues that his interests—in obtaining employment and adjusting his status—fall "within the zone of interests protected and regulated by the statutes in question, the Immigration and Nationality Act and the Administrative Procedure Act."  First, reference to the APA generally is inadequate because the APA incorporates the zone of interests protected by the "relevant statute," in this case, the INA.  5 U.S.C. § 702.  Second, the Plaintiff cannot invoke the "zone of interests" protected by the INA at large to establish prudential standing in this case. "The Supreme Court has squarely disallowed such a kitchen-sink approach, however, and requires litigants to identify the relevant provisions with some particularity." *Programmers Guild, Inc. v. Chertoff*, 338 F. App'x 239, 242 (3d Cir. 2009) (citing *Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 529-30 (1991)).  Although the Court "do[es] not look at the specific provision said to have been violated in complete isolation," the Court must look "only to provisions having an 'integral relationship' with the provisions under which the suit was brought." *Fed'n for Am. Immig. Reform, Inc. v. Reno*, 93 F.3d 897, 903-04 (D.C. Cir. 1996) (quoting *Air Courier Conference*, 498 U.S. at 530).  In the case, the "relevant

9

provisions" are sections 1154(a)(1)(F) and 1154(b), which authorize employers to file I-140

petitions, and require the Attorney General to approve the petitions if the facts alleged therein

are true.  Integrally related to these sections, and thus relevant for the zone of interests inquiry is

section 1182(a)(5), which outlines the labor certification process, a prerequisite to the filing of

any I-140 petition, and which defines the substantive requirements for the I-140 petition.  The

relevant question, then, is whether Plaintiff's interests in working in the United States and

adjusting to legal permanent resident status are arguably within the zone of interests protected by

these sections of the INA.  The Court need not undertake an exhaustive review of what interests

are arguably protected by the provisions because it is clear that Plaintiff's interests are

inconsistent with the purpose of the relevant portions of the INA.

In 1965, Congress amended the INA to abolish the national quota system for admission

of immigrants and implemented a preferential immigration system, allotting visas on the basis of

close familial relationships with U.S. citizens and lawful permanent residents as well as certain

other qualifications, such as refugee status and those seeking employment.  *See* Immigration and

Nationality Act–Amendments, Pub. L. No. 89-236, 79 Stat. 911-922 (1965).  As part of this

overhaul, Congress revised the labor certification process for employment visas to require the

Secretary of Labor to affirmatively find that a non-citizen seeking to enter the United States for

employment purposes would not replace a U.S. worker or adversely affect U.S. wages or

working conditions.  *Id.* at § 10(a).  The purpose of this revision was to "to protect the American

economy from job competition and from adverse working standards as a consequence of

immigrant workers entering the labor market."  S. Rep. No. 89-748, *reprinted in* 1965

U.S.C.C.A.N. 3328, 3329; *id.* at 3333-34 ("Simultaneous with the abolition of national quotas,

controls to protect the American labor market from an influx of both skilled and unskilled foreign labor are strengthened.")[5]  As Judge Robert L. Wilkins explained,

> [T]he plain language, as well as the legislative history of [the relevant provisions] reflect a clear congressional concern for protecting the interests of American labor over those of foreign workers [and] . . . ensuring that American employers have the ability to hire qualified non-resident alien workers where no qualified American workers are available.  However, nothing in the language or legislative history . . . reflects a similar concern to protect the interests of non-resident aliens seeking to enter this country to obtain a job, and those aliens' interests are seemingly inconsistent with the interests of American workers.

*Pai v. USCIS*, 810 F. Supp. 2d 102, 2011 WL 3874717, at *7 (D.D.C. 2011); *id.* ("It does not appear that Congress intended that such a non-resident alien would be a putative plaintiff where his/her prospective employer refused to participate in the federal action.").  Plaintiff's interests are contrary to the specific purpose of the labor certification process and employment visa requirements, which are designed to protect U.S. workers from the adverse effects of non-citizens emigrating for employment purposes.  Thus the Court cannot find that Plaintiff's interests "are sufficiently aligned with the purpose" of the relevant sections of the INA so as to find Plaintiff has prudential standing to challenge the denial of the I-140 petition filed on his behalf.  *See Amgen,* 357 F.3d at 110.

Several other courts have likewise concluded that non-citizen workers lack standing to challenge the denial of I-140 petitions filed on their behalf.  *E.g., S & J Roofing Contractors v. Patterson*, No. 10-60964, 2011 WL 1045643, at *2-3 (Mar. 17, 2011); *George v. Napolitano*, 693 F. Supp. 2d 125, 130-31 (D.D.C. 2010); *Ibraimi v. Chertoff*, No. 07-3644, 2008 WL

---

[5]  Congress adopted the current version of § 1154(a)(1)(F) in 1990, but the legislative history does not indicate the purpose of the revisions made.  Immigration Act of 1990, Pub. L. No. 101-649, § 162(b)(1), 104 Stat. 4978 (1990); *see* H. Conf. Rep. No. 101-955.

3821678, at *3 (D.N.J. Aug. 12, 2008).  Though not addressing I-140 petitions specifically,

several more courts concluded beneficiaries of various types of visa petitions lacked standing to

challenge the denial of petitions filed on their behalf.  *E.g., Liao v. Holder*, 691 F. Supp. 2d 344,

350-51 & n.6 (E.D.N.Y. 2010) (finding only parents had standing to challenge the priority dates

applied to I-130 Petitions for Alien Relatives that the parents filed on behalf of their adult

children); *Li v. Renaud*, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010) (same); *Blacher v. Ridge*,

436 F. Supp. 2d 602, 606 n.3 (S.D.N.Y. 2006) (holding beneficiary of H1-B nonimmigrant work

visa lacked standing to challenge denial of visa petition).

　　　　With little substantive analysis, Plaintiff implores the Court to follow two other circuits

which have found that the non-citizen worker has standing to challenge the denial of an I-140

petition.  Initially, Plaintiff points to the Fourth Circuit's decision in *Taneja v. Smith*, 795 F.2d

355 (4th Cir. 1986).  In a footnote in that decision, the court concludes—with no analysis—that

the plaintiff had standing to challenge the denial of the I-140 petition initially filed on her behalf

but later withdrawn by her former employer, asserting "Taneja was in the 'zone of interest' of

the statute.'"  *Id.* at 358 n.7.  Rather than analyze the relevant zone of interests, the *Taneja* court

cites to two other circuit court opinions: *Chinese American Civic Council v. Attorney General*,

566 F.2d 321 (D.C. Cir. 1977), and *Stenographic Machine, Inc. v. Regional Administrator*, 577

F.2d 521 (7th Cir. 1978).  The Court will address *Stenographic Machine* in the context of the

other Seventh Circuit cases relied upon by Plaintiff.  For its part, the *Chinese American Civic

Council* case does not support the Fourth Circuit's conclusion.  In *Chinese American Civic

Council*, the court explicitly noted that the D.C. Circuit had yet to decide whether or not the non-

citizen beneficiary had standing to challenge the denial of the labor certification that might form

the basis for an I-140 petition.  566 F.2d at 327 n.15.  Moreover, the standing issue in *Chinese*

*American Civic Council* concerned whether or not the non-citizens living in Hong Kong had

standing to challenge denial of seventh preference refugee visas.  *Id.* at 324-325.  Prudential

standing to challenge refugee status is significantly different from this case because refugee

preference visas were specifically enacted to aid the refugees themselves, where as the labor

certification and I-140 visa petition process was designed to protect U.S. workers and the

domestic labor market.  *Cf.* S. Rep. No. 89-748, *reprinted in* 1965 U.S.C.C.A.N. 3328, 3329,

*with id.* at 3334-3335.  Plaintiff also cites to a district court case from the Fourth Circuit,

*Sanchez-Trujillo*.  The Court agrees that it is the non-citizen's "own status that is at stake when

the agency takes action on a preference classification preference."  *Supra*, section III.A.1.b.

However, the *Sanchez-Trujillo* court never applied the Supreme Court's test for prudential

standing; rather it looked only to whether the plaintiff in that case was "adversely affected."  620

F. Supp. at 1363.  Although Plaintiff is "adversely affected" by Defendants' decision in this case,

that alone is not sufficient to confer prudential standing.

The cases cited by Plaintiff from the Seventh Circuit are likewise unpersuasive.  In

*Stenographic Machines*, the court found the plaintiff non-citizen worker had prudential standing

to challenge the denial of his labor certification because his interests were "regulated" and

"injured" by the Defendant's decision to deny the requested labor certification.  577 F.2d at 527-

28.  Although the Court agrees with the Seventh Circuit that non-citizen workers are "injured"

by the denial of labor certifications and I-140 petitions filed on their behalf, the approach taken

by the court in *Stenographic Machines* is significantly broader than the zone of interests test

applicable in this Circuit, in two ways.  First, the D.C. Circuit extends prudential standing only

to those plaintiffs whose interests are sufficiently aligned with the purposes of the relevant statutory provisions. *Amgen*, 357 F.3d 103.  By contrast, the test applied in *Stenographic Machines* confers prudential standing to anyone affected or regulated by the statutory scheme. 577 F.2d at 528.  Such a broad grant of standing would render the prudential standing requirement meaningless as anyone who could claim an injury in fact fairly traceable to the conduct at issue would by definition be "affected" by the conduct in question.  This Circuit takes a much narrower approach to prudential standing. *See, e.g., Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 282-85 (D.C. Cir. 1988); *Calumet Indus., Inc. v. Brock*, 807 F.2d 225, 228-29 (D.C. Cir. 1986).  Second, after admitting that the labor certification process in the INA was enacted to protect American workers, the *Stenographic Machines* court found the non-citizen worker's interests met the zone of interests test because the INA generally was intended, "at least in part for the protection of aliens who are arguably entitled to enter or remain in the United States," on the basis of one of the preference classifications. 577 F.2d at 528.  By contrast, in *Amgen*, the D.C. Circuit specifically faulted the district court for looking to the broad purpose of the statute in question (the Medicare Act) and "neglect[ing] the more specific interest protected by [the applicable sections]." 357 F.3d at 110.  In the context of the purpose of the specific sections of the INA relevant to Plaintiff's claim, by the *Stenographic Machines* court's own admission, Plaintiff's interests are outside the zone of interests of the relevant portions of the INA.

The remaining cases cited by Plaintiff rely on *Stenographic Machines* and *Taneja* in finding prudential standing, and on that basis do not persuade the Court that the Plaintiff has standing here. *Constr. and Design Co.*, 563 F.3d at 597-98; *Ghaly v. INS*, 48 F.3d 1426, 1434

n.6 (7th Cir. 1995). The *Construction and Design* court applied the broader zone of interest test

utilized in *Stenographic Machines*, finding the worker had standing to challenge the denial of his

I-140 petition because he was "aggrieved" by the denial of the petition. 563 F.3d at 598. As

explained above, this Circuit employs a narrower version of the zone of interests test. Simply

being aggrieved by an agency's action is insufficient. *Ghaly* is inapposite to Vemuri's case

because Ghaly applied for a visa based on his marriage to a U.S. citizen, not on the basis of an

offer of employment. 48 F.3d at 1427. The *Ghaly* court's conclusion that Ghaly was "within the

zone of interest regulated or protected by the marital fraud statute," has no bearing on whether

Vemuri falls within the zone of interest of the employment preference visa provisions. *Id.* at

1434 n.6. Under the zone of interests test applicable in this Circuit, Plaintiff's interests run

contrary to the purpose of the relevant statutory provisions, and Plaintiff lacks prudential

standing to challenge the denial of the I-140 visa petition filed on his behalf.

      B.     *Standing to Challenge Denial of Plaintiff's I-765 and I-485 Applications*

Defendant further argues that Plaintiff's claim challenging the denial of his I-485

and I-765 applications should be dismissed on the grounds that the Court lacks jurisdiction.

The Court agrees that it lacks subject matter jurisdiction over Plaintiff's claim, albeit for a

different reason. The parties agree that upon denial of Real Technologies I-140 petition,

Defendants denied Plaintiff's I-485 and I-765 applications as a matter of law. Defs.' Reply

at 9, n.16; Pl.'s Opp'n at 8-9. At the point Plaintiff lacks standing to challenge the denial of

the underlying I-140 petition, Plaintiff also lacks standing to challenge the denial of the

related I-485 and I-765 applications for want of a redressable injury. Any injury Plaintiff

might attribute to the denial of his adjustment of status and employment authorization

applications could only be redressed by an order requiring Defendants to re-open and

ultimately approve Real Technologies' I-140 petition.  Plaintiff must have a valid I-140

petition on which to base his I-485 application, and a pending I-485 application is required

for approval of his I-765 application.  *Supra*, Section I.A.  Because Plaintiff lacks standing

to challenge the denial of the I-140 petition, the Court lacks jurisdiction to order Defendants

to re-open the I-140 petition.  For the same reason, Plaintiff's argument that Defendants

should have construed the I-140 petition as "still pending" during the administrative appeals

process is likewise unpersuasive: even if USCIS should have considered the I-140 petition

as still pending, the Court has no jurisdiction to order Defendants to re-open the petition,

and thus cannot remedy any harm caused by the Defendants' purported error.  With no

mechanism by which the Court can remedy the alleged injury, Plaintiff lacks standing to

challenge the denial of his I-485 and I-765 applications.

      C.      *Portability of the I-140 Petition*

Although the bulk of the parties' arguments focus on whether or not Plaintiff's

interest in obtaining employment and adjusting his immigration status  meets the zone of

interests test for prudential standing, Plaintiff also appears to argue that he has an additional

injury that might support his claim of constitutional standing.  In his Opposition, Plaintiff

contends that he "also has a personal stake in the outcome of this I-140 petition for

immigrant worker as he could receive more benefits than the employer."  Pl.'s Opp'n at 5.

Plaintiff goes on to reference the "portability provisions" governing I-140 petitions.  USCIS

guidelines provides that if the I-140 and I-485 have been pending for more than 180 days

and the non-citizen worker moves to a new employer (that is, "ports" the visa petition), the

agency should approve the I-140 if "the petition is approvable but for an ability to pay issue

or any other issue relating to a time after the filing of the petition."  William R. Yates,

Interim Guidance for Processing Form I-140 Emp't-Based Immig. Pets. and Form I-485 and

H1-B Pets. 3 (May 12, 2005), HQPRD 70/6.2.8-P; U.S.C. § 1154(j).

Plaintiff's argument is far from clear, but the Court understands Plaintiff to contend

that if the Court were to order USCIS to reopen Real Technologies' I-140 petition, Plaintiff

could then wait the required 180 days, and then change employers while maintaining the I-

140 petition.  To the extent Plaintiff actually makes this argument in his Opposition, the

argument fails for two reasons.  First, Plaintiff never alleges any actual injury from his

inability to "port" the I-140 petition.  Real Technologies' I-140 petition was pending for

nearly one year before it was denied by the USCIS, and Plaintiff never alleges he attempted

or intended to port the petition to another employer during that time, or at any point after the

petition was denied.  *See* Pl.'s Ex. 4, at 1.  There is no allegation—in the Complaint or in

Plaintiff's Opposition—that Plaintiff wanted to or attempted to port Real Technologies' I-

140 petition, but could not because of Defendants' conduct.  Plaintiff does not even allege

that he *now* would port the petition to a new employer if the Court were to order Defendants

to re-open the petition.  *Cf. Constr. and Design Co. v. USCIS*, 563 F.3d 593, 597-98 (7th

Cir. 2009) (finding I-140 beneficiary had standing to appeal denial of the petition where

new employer provided affidavit that the company would employ beneficiary upon receipt

of employment authorization).  Second, even if Plaintiff had alleged to have suffered some

redressable injury, Plaintiff would still have to show prudential standing based on his

interest in porting the petition.  *Glickman*, 92 F.3d at 1232 ("[T]he injury that supplies

17

constitutional standing must be the same as the injury within the requisite 'zone of interests' for purposes of prudential standing."). However, as explained at length above, Plaintiff's interest in obtaining employment in the United States runs counter to the Congressional purpose of the labor certification and I-140 visa petition provisions of the INA. *Supra*, Section III.A.2. Therefore, even if Plaintiff could show an injury in fact for purposes of constitutional standing, Plaintiff cannot show that his interests associated with porting Real Technologies' I-140 petition fall within the zone of interests of the relevant provisions of the INA sufficient to confer prudential standing.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds Plaintiff lacks standing to pursue his Complaint. Plaintiff has alleged a redressable injury from the denial of his employer's I-140 visa petition sufficient to show constitutional standing. However, Plaintiff's interests run contrary to the Congressional purposes of the labor certification process and employment preference visas, and therefore Plaintiff lacks prudential standing to challenge the denial of the I-140 petition. Consequently, the Court lacks jurisdiction to require Defendants to reopen and approve the I-140 petition which formed the basis for Plaintiff's I-485 application for adjustment of status, which in turn is required for approval of Plaintiff's I-765 applications for employment authorization. Therefore, the Court cannot redress any injury Plaintiff might allege from the denial of these applications, and Plaintiff lacks standing to challenge the denial of his I-485 and I-765 applications. Accordingly, Defendants' [5] Motion to Dismiss Plaintiff's Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is GRANTED. Defendant's motion to dismiss for lack of

subject matter jurisdiction is GRANTED.  Defendant's motion to dismiss for failure to state a claim is not reached based on the Court's lack of jurisdiction.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge